James E. Cross, Bar No. 009063
Brenda K. Martin, Bar No. 013318
**OSBORN MALEDON P.A.**
2929 North Central Avenue, Suite 2100
Phoenix, Arizona  85012-2794
Telephone:   (602) 640-9307
Facsimile: (602) 664-2077
E-mail:        jcross@omlaw.com
                   bmartin@omlaw.com
Former Examiner, an Administrative Claimant

Michael P. Lane – 007435
**LANE & NACH, P.C.**
2025 North Third Street
The Brookstone - Suite 157
Phoenix, Arizona  85004
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003
Email:  michael.lane@lane-nach.com
Attorney for  Robert A. MacKenzie, Trustee

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| HUGO E. RIBADENEIRA, | Case No. 2-04-08910-GBN |
| Debtor. | **JOINT MOTION TO CONVERT CASE TO CHAPTER 7 PROCEEDINGS OR TO ORDER ALTERNATIVE RELIEF** |

James E. Cross ("Cross"), former court-appointed examiner in this case and an unpaid

administrative claimant of the Estate, and Robert A. MacKenzie, Chapter 11 Trustee, jointly

move this Court to enter an Order converting the case to a case under Chapter 7 for cause

pursuant to 11 U.S.C. § 1112(b).  In support thereof, Movants respectfully represents that the

case should be converted because 1) the Debtor appears to have no assets with which to

reorganize or, alternatively, is concealing such assets from creditors; 2) the Debtor has failed

to confirm a plan within a reasonable time; and  3) the Debtor has failed to pay allowed

administrative expenses.

# I.    **BACKGROUND FACTS**

1.    The Debtor filed his petition under Chapter 13 of Title 11, U.S. Code (the "Bankruptcy Code"), on May 20, 2004.   On March 18, 2005, the Debtor's case was converted to a case under Chapter 11 of the Bankruptcy Code.

2.    After conversion of the case to Chapter 11, the Debtor remained in control of his assets (although he claims to possess none -- not even a checking account).

3.    On November 14, 2005, the Court appointed Cross as Examiner, for the limited purpose of investigating the validity of the Postnuptial Agreement ("PNA") between Hugo Ribadeneira and his non-debtor spouse, Rae (docket item no. 257).   Cross submitted his Examiners' Report to the Court on March 13, 2006 (the "Report"; docket item no. 287).

4.    The Report recites the undisputed details of the Debtor's actions in this case, and the Debtor's conduct pre-petition.   In his findings of fact, the Examiner points to the failures of disclosure by the Debtor that pervades this case:

- The actions of the Debtor and his non-debtor spouse were inconsistent with their assertions that the PNA had placed all the Debtor's community property assets, effectively including future income, beyond his control and thus out of the reach of creditors;

- Creditors interviewed by the Examiner stated that in conducting business with the Debtor, he never claimed he held assets as a result of the PNA;

- The claims of the creditors in the litigation underway on the petition date greatly exceeded those scheduled by the Debtor;

- By his failure to schedule his control of a trust into which his income was transferred, the Debtor concealed from the Court and creditors a substantial source of his income and assets;

- The Debtor's operating reports to the time of the Report were evidently deliberately engineered to obscure substantially all of the Debtor's actual business activities; and

- The Debtor claimed in his operating reports to earn very little money, but to be accruing accounts receivable at an immense rate.

2

2006521v2

The Examiner found "evidence of an attempt to manipulate the reporting requirements of the Bankruptcy Code and Rules" consistent with the Debtor's "manipulation of the various entities he controls, while claiming they are solely owned by his spouse" (Report, p. 12).

5.    On March 6, 2007, largely in response to the Report, and upon a finding of cause, the Court granted the motion of Desert Highlands Association that a trustee be appointed (docket item no. 431), and on April 5, 2007, the Court approved the appointment of Robert A. MacKenzie (the "Trustee") as Chapter 11 Trustee (docket item no. 444).

6.    In addition to the above, which was included in his Report, as a claimant, the Examiner points out the following undisputed facts as disclosed by the Debtor's filings with this Court:

a.    The Debtor's original Schedule "A" shows no ownership of real property and no ownership interests in any corporations, partnerships, or other entities.  When Mr. Ribadeneira amended his schedules on June 30, 2004 (docket item no. 14), he continued to assert he owned no real property or equity interests, but did disclose "for informational purposes only" the equity interests in such assets he claimed were held by his spouse.  These entities held millions of dollars in real estate, notwithstanding that at the time of the petition the Debtor claimed his wife had no income whatever and he himself had earned only $11,600 in the three years pre-petition.  In a subsequent amendment, the Debtor claimed his wife earned $2000 per month, while he earned $1600;

b.    The Debtor's originally filed Statement of Financial Affairs showed no transfers to insiders or others during applicable time periods.  The Debtor amended his Statement of Financial Affairs twice, on August

3

26, 2004 and October 4, 2004. Each time, the Debtor disclosed transfers among himself, his marital community, several entities he claims are owned by his wife, and third parties, with no accounting being made for the consideration paid or the valuations of the properties transferred; and

c. In numerous instances in this case, the Court has been requested to approve settlements by and among several entities including Mr. and Mrs. Ribadeneira, companies affiliated with either or both, and creditors of the Estate. The Court has approved the compromises, as they appeared to involve no property of the estate. Assets were transferred as a result, and claims withdrawn or settled at no known expense to the Debtor, but rather through a satisfaction by non-Debtor assets. See, _e.g._, settlements with the Breazeales (docket items nos. 430 and 457), Eatons (docket items nos. 307 and 334), and the withdrawal without explanation of the claim of Gibney (docket items nos. 259 and 373). If the Estate did have an interest in these assets, either (a) because the interest was not fully disclosed by the Debtor, or (b) because the PNA is not a valid transfer of the Debtor's interests, as the Examiner's Report concluded, then the charade has continued under the very nose of this Court.

## II. <u>ARGUMENT</u>

### A. The Debtor has continued to inadequately disclose his income, assets, and expenses.

7.    Since the appointment of the Trustee eleven months ago, the Debtor has not remedied failures of disclosure cited by the Examiner.  The Debtor's operating reports and disclosure remain inscrutable, implausible and misleading.  In the six monthly operating statements most recently filed (docket nos. 502-505, 508 and 509), for example, the Debtor avers he has

- Carried in excess of $140,000 in accounts receivable for months or years, all of it accrued post-petition;

- Made no known effort to collect the receivables for the benefit of his reorganization or to pay the costs of administration of the case, and indeed has never named the obligor(s) of any of the funds owing to the Estate;

- Reduced the cash balance of the Estate, which exceeded $56,000 in June, 2005, to a total $108.67 as of the February, 2008 operating report, although he has not paid a single administrative claim and his counsel has never even filed a single fee application in over four years;[1]

- Earned $874 in six months, an amount equal to 50 percent of his personal expenses, which he does not detail;

- Is only able to pay Unites States Trustee fees because he receives $250 from "RPC" – presumably the Ribadab Properties Corporation owned by his spouse – when such fees fall due.

8.    The Debtor still reports money on deposit in the account of his "dba Business Entity," which provides a non-DIP bank account through which funds are periodically channeled.  The name of the "dba Business Entity," why it is maintained, and why it has a non-DIP bank account have not been disclosed to the Court, the Trustee or the creditors by the Debtor.

9.    In addition to the pre-petition transfers outlined above, the Official Records of Maricopa County reveal two quit-claims of real property by Hugo Ribadeneira to Rae

---

[1] Oddly, not one of the attorneys who have been retained to represent the Debtor in the Chapter 11 or in the state court litigation have applied to be compensated during the course of the case.

2006521v2

Ribadeneira post-petition and a third quit-claim deed from the Debtor and his wife to a third party, as set forth in the attached Exhibit A. The case docket lists no order of this Court granting the authority for any quit-claims, and the value of the Estate's interest in such assets is unknown.

10. In this case, there is an undeniable and overwhelming record of deception upon the Court, the Trustee and the creditors of this Debtor.

**B. The Debtor has not confirmed a Plan of Reorganization after nearly four years in bankruptcy and three years in Chapter 11.**

11. Through the four years this case has been pending before this Court, and despite the monthly operating reports showing virtually no collected income, the Debtor's counsel, Mr. NewDelman, has claimed that the Debtor can confirm a Plan which will provide a payment of one hundred percent (100%) of all allowed claims.

12. As the Court is aware, after nearly three years in Chapter 11, the Debtor has failed to confirm a plan of reorganization.

13. Indeed, it is certain that no plan could ever be confirmed in this case. The Debtor has reported consistently there are no assets to reorganize, or he has consistently misled and deceived all parties and no plan could possibly be proposed "in good faith" as required by §1129(a)(3) of the Bankruptcy Code. One or the other must be true.

14. The Debtor repeatedly represents and admits he has virtually no income, including negative net income in the last six months. His schedules claim a total $11,600 gross income during the three *years* preceding the petition date. Although he claims to have accrued $140,000 in receivables post-petition, evidently none of the Debtor's clients ever pays, and his initial plan dated November 3, 2005, acknowledges his business is really "generating receivables." The company he stated as his employer in the Statement of

Financial Affairs, EPPS Consulting, Inc., was administratively dissolved a year ago. <u>See</u>, Arizona Corporation Commission Corporate Inquiry, attached hereto as Exhibit B.

15.     On the other hand, though effectively without income, the Debtor continues to live in a luxury house and drive luxury cars, and is apparently building a luxury resort in Costa Rica.  In addition, Mr. Ribadeneira touted his entrepreneurial acumen in a newspaper article in *The Arizona Republic* in June 2007, attached hereto as Exhibit C. In the article, he boasts of a three-year involvement in the promotion and development of a $34.5 million dollar luxury spa and resort in Costa Rica.  No mention of this project appears in any filing with this Court.  The Debtor has not recorded a single expense related to it, not even for travel or single telephone call.   No interest in the project has been scheduled or acknowledged in any way by the Debtor.  The other possibility, then, is that the Debtor's *de facto* ownership and control of his "employer," whether it is dissolved or nominally owned by his spouse, permits him to manipulate and conceal all his income and expenses.  There is but one conclusion to be drawn.

16.     If the first of the premises stated above is true, this case should be converted to Chapter 7 because there are no assets.  If the second is true, the Court must convert this case because of the patent absence of good faith by a manipulative and deceitful debtor.

### C.  The Debtor is not paying administrative claims.

17.     The Debtor's handling of administrative claims is one more indicia of proof that one or the other of these reasons for conversion to Chapter 7 is mandated.  By Order dated December 20, 2006 (docket item no. 388), the Court approved the Examiner application as an administrative claim and directed the Debtor "to make immediate payment to the Examiner for his outstanding fees in the amount of $18,364.50 and reimbursement of costs in the amount of $2,970.46."  Ignoring the Court's Order, the Debtor has never paid the

2006521v2

fee award, yet the Debtor has retained and, no doubt, paid several lawyers during this same period. Either the Debtor is so insolvent that administrative claims cannot be paid, or he is so contemptuous of the bankruptcy process and this Court that he will not pay them. In neither case may a plan ever be confirmed.

### D. The Debtor has funneled money *sub rosa* from the Estate to undisclosed schemes beyond the reach of creditors.

18. As noted above, the Debtor has engaged in transfers of assets without due accounting before and since the petition. Since the appointment of the Trustee, he has stated his progress in building a $34.5 million health spa and resort and retaining professionals to help market condominiums as a part of it. This was reported not to the Court, however, but to the local newspaper. See, Exhibit C attached hereto. For three years the Debtor has concealed the existence of this project. Money of the Estate, or subject to claim by the Estate, has been used in this development, and it is a further affront to the Court and the bankruptcy process.

### E. The time within which the Debtor's numerous pre-petition conveyances may be avoided by the Trustee will expire soon.

19. Respecting the principal question submitted to him as Examiner, Movant noted in the Report that the actions of the Ribadeneiras were wholly at odds with their assertion that a bright line separated the assets and obligations of each. The Report concluded, "[b]ased on the findings of facts herein, it is the determination of the examiner that the PNA, though otherwise a valid agreement, is not enforceable as a transfer of Debtor's interests in community property. Debtor's actions belie such a transfer and contain sufficient indicia of fraud as to allow creditors and this court to avoid the PNA."

2006521v2

20. Debtor's many transfers of community-property assets to his non-debtor spouse, and the several transfers of property among the Ribadeneira entities of public record, may well be avoidable and recoverable under 11 U.S.C. §§ 548 and 550.

21. Pursuant to 11 U.S.C. § 546(a)(1), the Trustee must file any avoidance actions not later than one year after his appointment, or by April 5, 2008. The Trustee has taken a "wait and see" attitude based upon the Debtor's assertion that he was proposing a 100% payment plan. "Wait and see" has yielded no progress and it is time for action.

22. Cross has incurred additional fees in uncovering facts supporting conversion and indicating Estate assets. This time should be compensated.

## III. **LEGAL ARGUMENT**

23. U.S. Code Title 11, §§ 1112(b) directs that the Court shall convert a Chapter 11 case to one under Chapter 7 for "cause" including, among other things:

> (1) Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (2) Gross mismanagement of the estate;
>
> (3) Failure to comply with an order of the court; and
>
> (4) Failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.

24. The present case meets all four standards for conversion, and the Report certainly supports the additional contention that the Debtor has acted in unremitting bad faith both pre- and post-petition, a bar to confirmation of any plan under 11 U.S.C. § 1129(a)(3). The causes enumerated in Section 1112(b) are not exhaustive and a court may consider other factors as they arise, using its equitable powers to reach appropriate results in individual cases. *See, In re Consolidated Pioneer Mortg. Entities*, 248 B.R. 368, 375 (9th Cir. B.A.P. 2000) (citing H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977). Likewise, a bankruptcy court is given wide discretion to determine whether to convert a Chapter 11 case to a Chapter

7 case for cause. *Id.* at 392, *citing*, *In re Greenfield Drive Storage Park*, 207 B.R. 913, 916 (9th Cir. B.A.P. 1997). Thus, when a Chapter 11 case cannot achieve a reorganization within the statutory requirements of the Code, a case should either be dismissed or converted. *In re Sid Bernstein, Ltd.*, 1996 WL 183375 at pp. 3-4 (Bankr. E.D. Pa. 1996) (court finding that conversion or dismissal of Chapter 11 was appropriate when there were no assets to liquidate); *see*, *also*, *In re Erin Farms, Inc.*, 336 B.R. 600, 635 (6th Cir. BAP 2005) (upholding bankruptcy court's decision to convert Chapter 11 case, noting that order was based on findings that debtor was no longer operating, debtor was not likely to rehabilitate, and that liquidation under Chapter 7 would be less expensive); similarly, *In re Koerner,* 800 F.2d 1358 (10th Cir. 1986) and *In re Winslow*, 123 B.R. 641 (Bankr. D. Colo 1991) (delay of 16 to 18 months in presenting confirmable plan one cause for conversion).

25. In this instance, all the specific grounds for "cause" to convert this case are present: (a) no reorganization is necessary or feasible, on account of the absence of any property of the estate; (b) the estate's funds stand at less than 0.3% of those in June, 2005, and the Debtor states monthly his incapacity to produce meaningful business income; (c) the Debtor has failed to heed valid Orders of this Court, *e.g.*, to pay the Examiner; and (d) confirmation of a plan in this four-year-old case would sanction the deception this Debtor has performed.

WHEREFORE, Movants ask the Court for its Order converting this case to one under Chapter 7 of the Bankruptcy Code, and for such other and further relief as is just in the circumstances. Furthermore, James E. Cross requests allowance of an additional $4,000 in fees incurred in attempting to force the Debtor to comply with this Court's previous order regarding payment of his fees incurred as Examiner.

. . .

10

2006521v2

RESPECTFULLY SUBMITTED this 19th day of March, 2008.

**OSBORN MALEDON, P.A.**

By: /s/ James E. Cross
James E. Cross, Esq.
Brenda K. Martin, Esq.
2929 North Central, Suite 2100
Phoenix, Arizona 85012
Former Examiner and an Administrative Creditor

LANE & NACH, P.C.

By: /s/ Michael P. Lane
Attorney for Chapter 11 Trustee

COPY of the foregoing sent
by electronic transmission this
19th day of March, 2008, to:

Jonathan E. Hess, Esq.
OFFICE OF THE U.S. TRUSTEE
230 N. 1st Avenue, Suite 204
Phoenix, AZ 85003-1706
jon.e.hess@usdoj.gov

Allan D. NewDelman, Esq.
ALLAN D NEWDELMAN PC
80 E. Columbus Ave.
Phoenix, AZ 85012
Counsel for Debtor
anewdelman@qwest.net

Michael Gerity, Esq.
ISRAEL & GERITY
3300 N. Central Ave. #2000
Phoenix, AZ 85012
Special Counsel for Debtor

Joseph Cotterman, Esq.
Gallagher & Kennedy, PA
2575 E. Camelback Rd.
Phoenix, AZ 85016
Counsel for D.H.A.
jec@gknet.com

11

2006521v2

1    Terrance Dunmire, Esq.
     7077 E. Bell Rd., Suite 210
2    Scottsdale, AZ  85254
     Counsel for Rae Ribadeneira
3    tdunmire@parkwestpartners.com

4

5    /s/  S. Rochin

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# Exhibit "A"

Grand Canyon Title Agency, Inc.
  File #

AFTER RECORDING, RETURN TO:
Ribadeneira


  ATTN:
GRAND CANYON TITLE Ac...

ESCROW No: 1/3

# Unofficial Document

This area reserved for County Recorder

# QUIT CLAIM DEED

For consideration of Ten Dollars, and other valuable considerations, I or we,

**HUGO RIBADENEIRA, HUSBAND OF RAE RIBADENEIRA**
hereby quit-claim to

**Affidavit Exempt Pursuant to ARS 11-1134 B3**

**RAE RIBADENEIRA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

all right, title or interest in the following real property situated in **Maricopa**, County, **ARIZONA**:

**See Exhibit A attached hereto and made a part hereof.**

Dated this _10_ day of _June_ 2005

**HUGO RIBADENEIRA**

OFFICIAL SEAL
DONNA K. GIBSON
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Expires Jan. 7, 2006

STATE OF **ARIZONA**
County of **MARICOPA**    } ss

This instrument was acknowledged before me this _6_ day of _June_ _2005_ by HUGO RIBADENEIRA

Notary Public
My commission will expire _1-7-06_

**Exhibit A**

Lot 92, PINNACLE CANYON AT TROON NORTH UNIT 2, PHASE 1, according to Book 496, of Maps, Page 15, records of Maricopa County, Arizona.

EXCEPT all coal and other minerals in said land;

TOGETHER WITH the right to prospect for, mine and remove same as reserved in United States Patent.

Unofficial Document

OFFICIAL RECORDS OF

Unofficial
Document

Recording Requested By:

And When Recorded Mail To:

RIBADAB

9110601C

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUIT CLAIM DEED

For consideration of Ten Dollars, and other valuable considerations, I or we,

**HUGO RIBADENEIRA, HUSBAND OF RAE RIBADENEIRA**

hereby quit-claim to

**RAE RIBADENEIRA, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

all right, title or interest in the following real property situated in **Maricopa**, County, **ARIZONA**:

Lot 37, OASIS PLAZA, according to Book 98, of Maps, Page 39, records of Maricopa County, Arizona.

TOGETHER WITH the abandoned 10 foot alley lying West of the West line of said Lot 37 and between the Westerly prolongation of the South line and the Westerly prolongation o the North line of said Lot 37.

Dated this 10ᵗʰ day of November 2005

**Affidavit Exempt
Pursuant to
ARS 11-1134** _B3_

_____
**HUGO RIBADENEIRA**

_____

_____          _____

STATE OF **ARIZONA**          } ss
County of Maricopa

This instrument was acknowledged before me this _28_ day of
_NOVEMBER_, 2005 by HUGO RIBADENEIRA

_____
Notary Public
My commission will expire _1-7-06_

OFFICIAL SEAL
DONNA K. GIBSON
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Expires Jan. 7, 2006

*Holscar Ply Fle*

**Unofficial Document**

**WHEN RECORDED RETURN TO:**
Glen Hallman, Esq.
Gallagher & Kennedy
2575 East Camelback Road
Phoenix, Arizona 85016-9225

## QUIT CLAIM DEED

For and in consideration of the sum of $10.00 and other valuable consideration, RPC-Eaton, L.L.C., Ribadab Properties Corporation, Dr. Hugo Ribadeneira, Rae Ribadeneira and Michele Ribadeneira, as GRANTORS, individually and collectively,

do hereby Quit Claim unto:

   Roy and Judith Eaton, as GRANTEES,

all right, title and interest in and to the following described property situated in Maricopa County, Arizona:

   *Lot 82, Pinnacle Canyon, Unit 2, Phase 1, at Troon North*

DATED this 7th day of July, 2006.

                              **RPC-Eaton, L.L.C.**

                              By _____,
                              on behalf of Ribadab Properties Corporation
                              Its:   Administrative Member

   This Instrument was acknowledged before me this 7th day of July, 2006, by Dr. Hugo R. Ribadeneira, on behalf of Ribadab Properties Corporation.

                              _____
                              Notary Public

My commission expires:
12/28/08

> Notary Public State of Arizona
> Maricopa County
> Jan Metzger
> My Commission Expires
> 12/28/2008

   Pursuant to A.R.S. Section 11-1134(A)(4), this Quit Claim Deed is exempt from the affidavit requirements of A.R.S. Section 11-1134.

Ribadab Properties Corporation

By: _____

Its: PRESIDENT

This Instrument was acknowledged before me this 7ᵗʰ day of July , 2006, by
Rae Ribadeneira .

Notary Public State of Arizona
Maricopa County
Jan Metzger
My Commission Expires
12/28/2008

_____
Notary Public

My commission expires:
12/28/2008

Dr. Hugo Ribadeniera

_____

This Instrument was acknowledged before me this 7ᵗʰ day of July , 2006, by Dr.
Hugo Ribadeneira.

Notary Public State of Arizona
Maricopa County
Jan Metzger
My Commission Expires
12/28/2008

_____
Notary Public

My commission expires:
12/28/2008

Rae Ribadeneira

_____

This Instrument was acknowledged before me this 7ᵗʰ day of July , 2006, by
Rae Ribadeneira.

Notary Public State of Arizona
Maricopa County
Jan Metzger
My Commission Expires
12/28/2008

_____
Notary Public

My commission expires:
12/28/2008

2

Michelle Ribadeniera

This Instrument was acknowledged before me this 7th day of July , 2006, by Michelle Ribadeneira.

Notary Public State of Arizona
Maricopa County
Jan Metzger
My Commission Expires
12-28-2008

Notary Public

My commission expires:

12/28/2008

1382373 / 18215.0001
U:\ATTORNEYS\Cho\RPC-15219\Quit Claim Deed.DOC

Unofficial Document

3

# Exhibit "B"

azcentral

# Scottsdale man to open Costa Rica medical spa

**Stephanie Paterik**
The Arizona Republic
Jun. 10, 2007 12:00 AM

A Scottsdale man is preparing to open a $34.5 million medical spa resort in Costa Rica at the end of next year

The Ailanto Wellness Resort and Spa ("ailanto" means "sea of heaven" in Italian) is situated on 85 acres of rain forest at the base of a volcano. The resort aims to be a full-service retreat for people who want to get cosmetic surgery and stay awhile to recover.

"We call it a beauty enhancement center," said Hugo Edward Ribadeneira, the project's creator and investor.

advertisement

A U.S. doctor will supervise a staff of Costa Rican and Colombian medical doctors, naturopaths, nutritionists, homeopaths, dentists and chiropractors. There also will be a rehabilitation center for alcoholics and drug addicts.

Guests don't have to go under the knife to book one of the 400 rooms, which will be rented by the day, week or month, and run between $285 and $500 a night, depending on the season and the size of the suite.

Ribadeneira hired real estate agents in Costa Rica, Colombia, Spain, Venezuela, Florida, Arizona and New York to start selling the rooms as condos last month.

People can stay there year-round or rent them to guests.

Ribadeneira has an eclectic resume. Most recently, he developed custom and semi-custom homes in the Valley. He used to work as an international tax consultant, got a doctorate in law and trained as a naturopath, although he never practiced medicine.

He spoke about the project with *T he Republic* last week.

**Question:** What differentiates this project from a typical medical spa?

**Answer:** What differentiates us from all the medical spas people talk about is that we provide (full) medical services, too. We're going to have cosmetic surgery, anything that has to do with beauty. . . . Instead of just the physical aspects of it, we (also) focus on mind and spiritual aspects. We will practice yoga and meditation. It is a holistic approach.

**Q:** What does the property look like?

**A:** It's very private because it's inside of

Advertisement



FormatDynamics

Print Powered By

# az central

the jungle. Of the 85 acres, 25 are dedicated to nature and a natural spa. The yoga and meditation chapels are on top of the trees. There are monkeys, toucans, egrets, butterflies. Instead of having a CD playing music while you are having your therapies, you have the jungle sounds around you.

We're sitting right at the base of a volcano, so there are thermal waters. A river will run through the entire subdivision. You can jump in stream and three types of lagoons (cold, warm and hot).

Q: What sparked this idea?

A: I've been working on this idea for about three years. I met with a friend of mine, a doctor from Portland, three years ago to discuss the idea of a medical spa . . where people can come for an elective operation and stay and recover. Usually you have to leave after the procedure.

We chose Costa Rica because of the prices. For the same price as a procedure in the United States, you get to stay there for seven days and recover, which is important.

When you come home with a face lift, no one will know what happened because you're healed.

Q: What are the accommodations like?

A: The idea was to combine a medical spa with a resort spa and hotel. It's not a standard, regular hotel. We're building beautiful, stunning Tuscan homes like you see in Scottsdale.

Several patients or guests stay in the same house, like suites. There's a concierge, personal chef, chauffer, helicopter to get you to the beach or hospital. If something goes wrong, we can get you there in five minutes.

Because Costa Rican land is pretty inexpensive, we're building a very good resort that in the States we couldn't afford to do.

A section of the resort is dedicated to assisted living. These houses are very luxurious.

Q: A few local hotels are turning guest rooms into treatment and recovery rooms. Is this a trend?

A: Medical tourism is very, very big. We timed it well. I've mixed three kinds of tourism: medical, regular and ecotourism in one. We're surrounded by 8,000 acres of protected park. You can hike. You can pick up volcano mud.

Q: When you decided to build this, what was the biggest risk?

A: The biggest risk is always (being) unable to sell the homes. As a businessman, I looked at it three ways. I said, 'My dream is to build a spa. If it doesn't work, what do I end up with?' I said, 'I'll build assisted living because that is always needed.' And the third is to build a subdivision. and people live there happily ever after.

Advertisement

PrinterStitial™ Ads by
Format Dynamics.

FormatDynamics

Print Powered By

# Exhibit "C"

Arizona Corporation Commission
State of Arizona Public Access System

## Jump To...

| Annual Reports | Scanned Documents | Notices of Pending Administrative Dissolution | Administrative Dissolutions and Reinstatements | Microfilm |

---

| Corporate Inquiry |
|---|

| File Number: -0862971-7   AD-DISSOLVED-FILE ANNUAL REPORT 02/15/2007 | Check Corporate Status |
|---|---|

| Corp. Name: EPPS CONSULTING, INC. |
|---|

## Domestic Address

| 3002 N 67TH PL |
|---|
| SCOTTSDALE, AZ 85251 |

## Statutory Agent Information

| Agent Name: EDWARD J RIBADENEIRA |
|---|
| Agent Mailing/Physical Address: |
| 4110 N SCOTTSDALE RD #165 |
| SCOTTSDALE, AZ 85251 |
| Agent Status: APPOINTED 01/11/1999 |
| Agent Last Updated: 09/29/2004 |

## Additional Corporate Information

| Corporation Type: BUSINESS | Business Type: GENERAL CONSULTING |
|---|---|
| Incorporation Date: 01/11/1999 | Corporate Life Period: PERPETUAL |
| Domicile: ARIZONA | County: MARICOPA |
| Approval Date: 01/11/1999 | Original Publish Date: 02/12/1999 |
| Status: AD-DISSOLVED-FAIL TO ANNUAL REPORT | Status Date: 02/15/2007 |

## Officer Information

| | |
|---|---|

```
RAE RIBADENEIRA                    MICHELLE A RIBADENEIRA
PRESIDENT/CEO                      SECRETARY
3002 N 67TH PL                     3002 N 67TH PL
SCOTTSDALE,AZ   85251             SCOTTSDALE,AZ   85251
Date of Taking Office: 01/15/1999  Date of Taking Office: 01/15/1999
Last Updated: 02/24/2005           Last Updated: 02/24/2005
```

## Director Information

```
RAE RIBADENEIRA
DIRECTOR
3002 N 67TH PLACE
SCOTTSDALE,AZ   85251
Date of Taking Office: 01/11/1999
Last Updated: 02/24/2005
```

## Annual Reports

| Next Annual Report Due: 01/11/2006 | e FILE An Annual Report Online << Click Here |
|---|---|
| | FORMS For Annual Reports To Be Printed And Mailed << Click Here |

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
|---|---|---|---|---|---|
| 2005 | 01 | 01/06/2005 | | | |
| 2004 | 01 | 08/20/2004 | | | |
| 2003 | 01 | 09/12/2003 | | | |
| 2002 | 01 | 12/20/2001 | | | |
| 2001 | 01 | 06/25/2001 | | | |
| 2000 | 01 | 06/25/2001 | | | |

Back To Top

## Scanned Documents
### (Click on gray button to view document)

| Document Number | Description | Date Received |
|---|---|---|
| 00328840 | 00 ANNUAL REPORT | 06/25/2001 |
| 00328841 | 01 ANNUAL REPORT | 06/25/2001 |
| 00410590 | 02 ANNUAL REPORT | 12/04/2001 |
| 00783387 | 03 ANNUAL REPORT | 09/12/2003 |

| 01005608 | 04 ANNUAL REPORT | 08/20/2004 |
| 01107495 | 05 ANNUAL REPORT | 01/06/2005 |

Back To Top

## Notices of Pending Administrative Dissolution

### (Click on gray button - if present - to view notice)

| Date | Reason |
| --- | --- |
| 10/24/2006 | DELINQUENT ANNUAL REPORT |
| 06/11/2004 | DELINQUENT ANNUAL REPORT |
| 06/12/2003 | DELINQUENT ANNUAL REPORT |
| 05/25/2001 | DELINQUENT ANNUAL REPORT |

Back To Top

## Administrative Dissolutions and Reinstatements

### (Click on gray button - if present - to view notice)

| Administrative Dissolution Date | Administrative Dissolution Reason | Reinstatement Date |
| --- | --- | --- |
| 02/15/2007 | AD-DISSOLVED - FILE A/R | |

Back To Top

## Microfilm

| Location | Date Received | Description |
| --- | --- | --- |
| 11296003022 | 01/11/1999 | ARTICLES |
| 20237045019 | 02/12/1999 | PUB OF ARTICLES |
| 31600002432 | 12/05/2000 | 01 ANNUAL REPORT |
| 20281071026 | 05/25/2001 | NOTICE OF PENDING ADMINISTRATIVE DISSOLUTION |
| 31624000965 | 06/25/2001 | 00 ANNUAL REPORT |
| 31624000966 | 06/25/2001 | 01 ANNUAL REPORT |
| 31643001918 | 12/04/2001 | 02 ANNUAL REPORT |
| 11558039004 | 11/07/2002 | 03 ANNUAL REPORT/MAIL RETURNED |
| 31736003079 | 06/12/2003 | NOTICE OF PENDING ADMINISTRATIVE DISSOLUTION |

| 31756002477 | 09/12/2003 | 03 ANNUAL REPORT |
| 11625005021 | 11/10/2003 | 04 ANNUAL REPORT/MAIL RETURNED |
| 31822002341 | 08/20/2004 | 04 ANNUAL REPORT |
| 31845001065 | 01/06/2005 | 05 ANNUAL REPORT |

Back To Top

- **Corporate Name Search Instructions**
- **General Web Site Usage Instructions**
- **Return to STARPAS Main Menu**
- **Return to A.C.C. Corporations Division Main Page**
- **Return to Arizona Corporation Commission Home Page**